**LeClairRyan**
*A Professional Corporation*
One Riverfront Plaza
1037 Raymond Boulevard
Newark, New Jersey 07102
(973) 491-3600
Attorneys for Plaintiff, Days Inns Worldwide, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAYS INNS WORLDWIDE, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>LEAD GHR ENTERPRISES, INC., a South Dakota Corporation; RORY MAYNARD, an individual; DUANE E. SANDER, an individual; THOM GROEGER, an individual; RANDY ALBERS, an individual; and WILLIAM MASON, an individual,<br><br>Defendants. | Civil Action No. 15-<br><br>**COMPLAINT** |

Plaintiff Days Inns Worldwide, Inc., by its attorneys, LeClairRyan, complaining of defendants Lead GHR Enterprises, Inc., Rory Maynard, Duane E. Sander, Thom Groeger, Randy Albers, and William Mason, says:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Days Inns Worldwide, Inc. ("DIW"), is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Parsippany, New Jersey.

2. Defendant Lead GHR Enterprises, Inc. ("Lead"), on information and belief, is a corporation organized and existing under the laws of the State of South Dakota, with its principal place of business at 900 Miners Avenue, Lead, South Dakota, 57754.

3. Defendant Rory Maynard ("R. Maynard"), on information and belief, is a member of Lead and a citizen of the State of South Dakota, having an address at 609 Ridge Road, Lead, South Dakota, 57754.

4. Defendant Duane E. Sander ("D. Sander"), on information and belief, is a member of Lead and a citizen of the State of South Dakota, having an address at 660 Faculty Drive, Brookings, South Dakota, 57006.

5. Defendant Thom Groeger ("T. Groeger"), on information and belief, is a member of Lead and a citizen of the State of South Dakota, having an address at 11226 Deer Mt. Road, Lead, South Dakota, 57754.

6. Defendant Randy Albers ("R. Albers"), on information and belief, is a member of Lead and a citizen of the State of South Dakota, having an address at 1733 ½ E. Tallent Street, Rapid City, South Dakota, 57701.

7. Defendant William Mason ("W. Mason"), on information and belief, is a member of Lead and a citizen of the State of South Dakota, having an address at 400 2nd Avenue, Belle Fourche, South Dakota, 57717.

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 inasmuch as the plaintiff and all the defendants are citizens of different states and the amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

9. This Court has personal jurisdiction over the defendants by virtue of, among other things, section 17.6.3 of the November 30, 2011 franchise agreement by and between Lead and

DIW (the "Franchise Agreement"), described in more detail below, pursuant to which Lead has consented "to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey . . . ."

10. This Court has personal jurisdiction over R. Maynard, D. Sander, T. Groeger, R. Albers, and W. Mason by virtue of, among other things, the terms of a guaranty (the "Guaranty"), described in more detail below, pursuant to which R. Maynard, D. Sander, T. Groeger, R. Albers, and W. Mason acknowledged that they were personally bound by section 17 of the Franchise Agreement.

11. Venue is proper in this District pursuant to section 17.6.3 of the Franchise Agreement, inasmuch as that provision contains an express waiver by Lead of any objection to venue in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Agreements Between The Parties

12. On or about November 30, 2011, DIW entered into the Franchise Agreement with Lead for the operation of a 96-room Days Inn® guest lodging facility located at 900 Miners Avenue, Lead, South Dakota, 57754, designated as Site No. 44731-99777-01 (the "Facility"). A true copy of the Franchise Agreement is attached hereto as <u>Exhibit A</u>.

13. Pursuant to section 5 of the Franchise Agreement, Lead was obligated to operate a Days Inn® guest lodging facility for a fifteen-year term.

14. Pursuant to section 3 of the Franchise Agreement, Lead was required, among other things, to make renovations to the Facility, in order to bring the Facility into compliance with "System Standards," "Approved Plans," and/or a "Punch List," all of which were defined in

or attached to the Franchise Agreement, and to achieve and maintain certain scores on periodic quality assurance inspections conducted by DIW.

15. Pursuant to section 3.2 of the Franchise Agreement, Lead was required to operate the Facility in compliance with DIW's "System Standards," as defined in the Franchise Agreement, including DIW's quality assurance requirements.

16. Pursuant to section 4.8 of the Franchise Agreement, DIW had the right to conduct unlimited quality assurance inspections of the Facility (and unlimited reinspections if the Facility received a failing score in the inspection) to determine whether the Facility was in compliance with DIW's quality assurance requirements.

17. Pursuant to section 7, section 18.1, and Schedule C of the Franchise Agreement, Lead was required to make certain periodic payments to DIW for royalties, system assessments, taxes, interest, reservation system user fees, and other fees (collectively, "Recurring Fees").

18. Pursuant to section 7.3 of the Franchise Agreement, Lead agreed that interest is payable "on any past due amount payable to [DIW] under this [Franchise] Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid."

19. Pursuant to section 3.6 of the Franchise Agreement, Lead was required to prepare and submit monthly reports to DIW disclosing, among other things, the amount of gross room revenue earned by Lead at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to DIW.

20. Pursuant to section 3.6 of the Franchise Agreement, Lead agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility and, pursuant to sections 3.6 and 4.8 of the Franchise

Agreement, Lead agreed to allow DIW to examine, audit, and make copies of the entries in these books, records, and accounts.

21. Pursuant to section 11.2 of the Franchise Agreement, DIW could terminate the Franchise Agreement, with notice to Lead, for various reasons, including Lead's (a) failure to pay any amount due DIW under the Franchise Agreement, (b) failure to remedy any other default of its obligations or warranties under the Franchise Agreement within 30 days after receipt of written notice from DIW specifying one or more defaults under the Franchise Agreement, and/or (c) receipt of two or more notices of default under the Franchise Agreement in any one year period, whether or not the defaults were cured.

22. On or about November 30, 2011, DIW entered into an Addendum to the Franchise Agreement for the State of South Dakota (the "South Dakota Addendum") with Lead. A true copy of the South Dakota Addendum is attached hereto as Exhibit B.

23. Pursuant to section 1 of the South Dakota Addendum, Lead agreed that, in the event of termination of the Franchise Agreement due to action of Lead, Lead "shall be, continue and remain liable to [DIW] for any and all damages which [DIW] sustained or may sustain by reason of such default or defaults and the breach of the Franchise Agreement on [Lead's] part until the end of the Term."

24. Pursuant to section 17.4 of the Franchise Agreement, Lead agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [Franchise] Agreement or collect amounts owed under this [Franchise] Agreement."

25. Effective as of the date of the Franchise Agreement, R. Maynard, D. Sander, T. Groeger, R. Albers, and W. Mason provided DIW with a Guaranty of Lead's obligations under the Franchise Agreement. A true copy of the Guaranty is attached hereto as <u>Exhibit C</u>.

26. Pursuant to the terms of the Guaranty, R. Maynard, D. Sander, T. Groeger, R. Albers, and W. Mason agreed, among other things, that upon a default under the Franchise Agreement, they would "immediately make each payment and perform or cause [Lead] to perform, each unpaid or unperformed obligation of [Lead] under the [Franchise] Agreement."

27. Pursuant to the terms of the Guaranty, R. Maynard, D. Sander, T. Groeger, R. Albers, and W. Mason agreed to pay the costs, including reasonable attorneys' fees, incurred by DIW in enforcing its rights or remedies under the Guaranty or the Franchise Agreement.

### The Defendants' Defaults and Termination

28. Beginning in 2013, Lead repeatedly failed to operate the Facility in accordance with DIW's System Standards, in breach of its obligations under the Franchise Agreement.

29. On November 15, 2013, DIW conducted a quality assurance ("QA") inspection of the Facility. By letter dated January 16, 2014, a true copy of which is attached hereto as <u>Exhibit D</u>, DIW advised Lead that (a) the Facility received a failing score in the QA inspection and, as a result, Lead was in default of its obligations under the Franchise Agreement, (b) pursuant to the Franchise Agreement, it had 60 days within which to cure the QA default, and (c) if the default was not cured, then certain special stipulations in the Franchise Agreement would automatically terminate, and the Franchise Agreement might be subject to termination.

30. By letter dated February 4, 2014, a true copy of which is attached hereto as <u>Exhibit E</u>, DIW advised Lead that (a) it was in breach of the Franchise Agreement because it owed DIW approximately $61,962.33 in outstanding Recurring Fees, (b) it had 10 days within

which to cure this monetary default, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

31.     By letter dated April 18, 2014, a true copy of which is attached hereto as <u>Exhibit F</u>, DIW advised Lead that (a) it was in breach of the Franchise Agreement because it owed DIW approximately $68,621.44 in outstanding Recurring Fees, (b) it had 10 days within which to cure this monetary default, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

32.     On April 10, 2014, DIW conducted a quality assurance ("QA") inspection of the Facility. By letter dated June 2, 2014, a true copy of which is attached hereto as <u>Exhibit G</u>, DIW advised Lead that (a) the Facility received a failing score in the QA inspection and, as a result, Lead was in default of its obligations under the Franchise Agreement, (b) pursuant to the Franchise Agreement, it had 30 days within which to cure the QA default, and (c) if the default was not cured, the Franchise Agreement might be subject to termination.

33.     By letter dated June 12, 2014, a true copy of which is attached hereto as <u>Exhibit H</u>, DIW advised Lead that (a) it was in breach of the Franchise Agreement because it owed DIW approximately $75,630.00 in outstanding Recurring Fees, (b) it had 10 days within which to cure this monetary default, and (c) if the default was not cured, then the Franchise Agreement might be subject to termination.

34.     By letter dated September 30, 2014, a true copy of which is attached as <u>Exhibit I</u>, DIW terminated the Franchise Agreement, effective September 30, 2014, due to Lead's repeated failure to meet its financial obligations to DIW and satisfy the required quality standards under the Franchise Agreement, and advised Lead that it was required to pay to DIW as actual damages for premature termination the sum of $96,000.00 as required under the section 18.3 of the

Franchise Agreement and section 1 of the South Dakota Addendum, and all outstanding Recurring Fees through the date of termination.

## FIRST COUNT

35.    DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 34 of the Complaint.

36.    Pursuant to sections 3.6 and 4.8 of the Franchise Agreement, Lead agreed to allow DIW to examine, audit, and make copies of Lead's financial information, including books, records, and accounts, relating to the gross room revenue earned at the Facility.

37.    The calculation of the monetary amounts sought by DIW in this action is based on the gross room revenue information supplied to DIW by Lead and, to the extent there has been non-reporting, DIW's estimate as to the gross room revenue earned by Lead.

38.    The accuracy of this estimate cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements and books from Lead.

**WHEREFORE**, DIW demands judgment ordering that Lead account to DIW for any and all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Facility.

## SECOND COUNT

39.    DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 38 of the Complaint.

40.    By virtue of the premature termination of the Franchise Agreement, DIW sustained a loss of future revenue over the remainder of the fifteen-year term of the Franchise Agreement.

41. Section 1 of the South Dakota Addendum provides that, in the event of termination of the Franchise Agreement due to action of Lead, Lead "shall be, continue and remain liable to [DIW] for any and all damages which [DIW] sustained or may sustain by reason of such default or defaults and the breach of the Franchise Agreement on [Lead's] part until the end of the Term."

42. Lead is liable to DIW for actual damages in the amount of $96,000.00 for the premature termination of the Franchise Agreement.

43. DIW has been damaged by Lead's breach of its obligation to operate a Days Inn® guest-lodging facility for the remaining term of the Franchise Agreement.

**WHEREFORE**, DIW demands judgment against Lead for actual damages in the amount of $96,000.00, together with interest, attorneys' fees, and costs of suit.

## THIRD COUNT

44. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 43 of the Complaint.

45. Pursuant to section 7, section 18.1, and Schedule C of the Franchise Agreement, Lead was obligated to remit Recurring Fees to DIW.

46. Despite its obligation to do so, Lead failed to remit certain of the Recurring Fees due and owing under the Franchise Agreement in the current amount of $135,705.51.

47. Lead's failure to remit the agreed Recurring Fees constitutes a breach of the Franchise Agreement and has damaged DIW.

**WHEREFORE**, DIW demands judgment against Lead for the Recurring Fees due and owing under the Franchise Agreement, in the current amount of $135,705.51, together with interest, attorneys' fees, and costs of suit.

## FOURTH COUNT

48. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 47 of the Complaint.

49. At the time of the termination of the Franchise Agreement, Lead was obligated to pay DIW Recurring Fees.

50. Despite its obligation to do so, Lead failed to pay certain of the Recurring Fees due and owing under the Franchise Agreement in the current amount of $135,705.51.

51. Lead's failure to compensate DIW constitutes unjust enrichment and has damaged DIW.

**WHEREFORE**, DIW demands judgment against Lead for the Recurring Fees due and owing under the Franchise Agreement, in the current amount of $135,705.51, together with interest, attorneys' fees, and costs of suit.

## FIFTH COUNT

52. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 51 of the Complaint.

53. Pursuant to the terms of the Guaranty, R. Maynard, D. Sander, T. Groeger, R. Albers, and W. Mason agreed, among other things, that upon a default under the Franchise Agreement, they would immediately make each payment and perform each obligation required of Lead under the Franchise Agreement.

54. Despite their obligation to do so, R. Maynard, D. Sander, T. Groeger, R. Albers, and W. Mason have failed to make any payments or perform or cause Lead to perform each obligation required under the Franchise Agreement.

55. Pursuant to the Guaranty, R. Maynard, D. Sander, T. Groeger, R. Albers, and W. Mason are liable to DIW for Lead's actual damages in the amount of $135,705.51 and Lead's Recurring Fees due and owing under the Franchise Agreement, in the current amount of $135,705.51.

**WHEREFORE**, DIW demands judgment against R. Maynard, D. Sander, T. Groeger, R. Albers, and W. Mason for damages in the amount of all actual damages and Recurring Fees due and owing under the Franchise Agreement and South Dakota Addendum, together with interest, attorneys' fees, and costs of suit.

**LeClairRyan**
Attorneys for Plaintiff,
Days Inns Worldwide, Inc.

By: _____
Bryan P. Couch

Dated: 5/27/15

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

**LeClairRyan**
Attorneys for Plaintiff,
Days Inns Worldwide, Inc.

By: _____
Bryan P. Couch

Dated: 5/27/15

11